A94A0726. GEORGIA POWER COMPANY v. GEORGIA
INDUSTRIAL GROUP et al.
(447 SE2d 118)

Pope, Chief Judge.

Georgia Power appeals the superior court's order reversing three orders of the Georgia Public Service Commission (Commission) authorizing Georgia Power to recover through riders or surcharges the costs of certain energy conservation programs and "interruptible service credits" paid to customers to reduce their supply of electricity during peak periods.

The issue in this case is whether such costs may be recovered through riders or whether they must be recovered through base rates utilizing the accounting procedure specified in OCGA § 46-2-26.1 for determining the rates to be charged. This case arose out of the legislature's passage in 1991 of the Integrated Resource Planning Act (IRP), OCGA § 46-3A-1 et seq. The IRP requires utilities to file long-range energy plans for review and approval by the Commission. OCGA § 46-3A-2. It also requires certification by the Commission before a utility can construct or sell an electric plant, enter into a long-term power purchase, or spend money on "demand-side capacity options" (programs that reduce the demand for electricity). OCGA §§ 46-3A-1 (4); 46-3A-3 (a). The IRP allows a utility to recover, inter alia, its costs for any certified demand-side capacity option and an additional sum as determined by the Commission to encourage the development of such demand-side programs. OCGA § 46-3A-9.

In accordance with the IRP, Georgia Power filed its first integrated resource plan with the Commission in January 1992. Although Georgia Power sought approval of 14 demand-side programs for its residential and commercial and industrial customers at this same time, it subsequently withdrew most of these programs with the intent to resubmit revised programs. In September 1992, Georgia Power filed revised demand-side programs for its residential customers and sought a proposed residential demand-side cost recovery rider to recover the costs of such programs. The rider proposed to pass through to residential customers (except low income customers) the expected program costs through 1993, subject to a true-up against actual program costs in a future proceeding at the end of 1993. Any over or under collection would be used, together with projected costs for 1994, to set the rider for 1994. On October 6, 1992, the Commission suspended the proposed residential rider for a period of five months to allow it ample opportunity to address the issues involved. In De-

cember 1992, Georgia Power filed new demand-side programs for its commercial and industrial (C & I) customers and sought two proposed recovery riders to recover the costs of such programs from its customers. One rider applied to large and the other to smaller C & I customers. The Commission held extensive hearings on both the proposed residential and commercial and industrial programs and riders.

Earlier, the Commission had approved two interruptible service riders pursuant to which Georgia Power would pay customers "interruptible service credits" to reduce the electricity they receive during peak demand. In May 1992, the Commission entered an accounting order authorizing Georgia Power to defer payments as to certain of these credits and deferred a final decision as to Georgia Power's cost recovery of such payments until it considered Georgia Power's proposed demand-side programs. On January 4, 1993, the Commission issued Certificate of Public Convenience and Necessity No. GPC-1-SS, the first of the three Commission orders in question. The Commission held that Georgia Power should be allowed to recover the costs of its "interruptible service credits" through a rate rider since the credits were relatively new and there would be a time period necessary to determine participation levels and customer responses.

On January 11, 1993, the Commission issued Certificate of Public Convenience and Necessity No. GPC-1-DSM, which approved Georgia Power's residential demand-side programs and, for a three-year trial period, its residential demand-side cost recovery rider. On August 6, 1993, the Commission issued Certificate of Public Convenience and Necessity No. GPC-2-DSM, which approved the demand-side programs Georgia Power proposed for its C & I customers and the two riders to recover the costs of such programs for a three-year trial period.

Appellee Georgia Industrial Group appealed to the Superior Court of Fulton County that portion of all three orders allowing Georgia Power to recover the costs of its demand-side programs and its "interruptible service credits" through a rider mechanism.[1] The superior court reversed the Commission's orders, finding that such expenses are recoverable only through the test year rate case procedure prescribed by OCGA §§ 46-2-25 and 46-2-26.1, which was not followed in this case. Georgia Power brought this appeal from the superior court's order, and we reverse.

1. Georgia Power first argues the superior court erred in finding the Commission's orders did not comply with OCGA § 46-2-25. Pursuant to that section, before any change to any rate, charge, classifica-

---

[1] Appellees Consumers' Utility Counsel and Georgia Textile Manufacturer's Association, intervenors in the proceedings before the Commission, also made appearances in the appeal to superior court.

tion, or service can be made, the utility must file notice of the proposed change with the Commission and the public at least 30 days before the proposed change is to take effect. OCGA § 46-2-25 (a). It further provides that the Commission may suspend the application of the proposed change for up to five months during which time it can hold hearings on the proposal. OCGA § 46-2-25 (b). Our review of the record reveals that Georgia Power gave the requisite notice of the proposed riders and that the Commission followed the procedure prescribed by § 46-2-25 in considering such riders. As noted above, the Commission suspended the proposed residential rider for a period of five months pending review, and held extensive hearings on both the proposed residential and commercial and industrial programs and riders. Accordingly, the superior court erred in finding the Commission's orders violated OCGA § 46-2-25.

2. The crux of Georgia Power's argument on appeal, however, is that the superior court's ruling is erroneous because the future test year accounting method set forth in OCGA § 46-2-26.1 only applies to general rate cases, which these proceedings do not involve, and because the IRP (OCGA § 46-3A-9) requires use of an accounting method different from the test year statute since the test year statute bases rates on estimated costs and the IRP requires recovery of actual costs.

OCGA § 46-2-26.1 ("Accounting methods to be used by electric utilities in ratemaking proceedings") provides in pertinent part: "(b) In any proceeding to determine the rates to be charged by an electric utility, the electric utility shall file jurisdictionally allocated cost of service data on the basis of a test period, and the commission shall utilize a test period, consisting of actual data for the most recent 12 month period for which data are available, fully adjusted separately to reflect estimated operations during the 12 months following the utility's proposed effective date of the rates. . . ." Thus, pursuant to this future test year method, utility rates are established after an analysis of combined revenue, expenses and investment forecasted for a future 12-month period. We agree with Georgia Power that § 46-2-26.1 sets forth the accounting method to be used in determining the general rates to be charged customers rather than issue-specific rates or riders to be charged a particular group of customers. In support of this conclusion, we note that Georgia Power has cited in the record to a number of occasions in which the Commission has approved rate riders without utilizing the test year method. For the reasons discussed below, we further hold that § 46-3A-9 of the IRP gives the Commission the authority to approve recovery of demand-side costs outside of a general rate case and the test year statute.

Traditionally, electric utilities have been concerned with selling electricity and building new power plants to meet increased demands

for electricity. Thus, under traditional ratemaking principles (the test year method), a utility's revenues are tied directly to how much electricity it sells. With the advent of integrated resource planning, however, the focus has been on ensuring the efficient use of electricity and the resources used to produce it. As noted earlier, demand-side programs are those which encourage customers to reduce their demand for electricity; often they involve incentives paid to customers to buy more energy efficient equipment for their homes and businesses. However, because demand-side investments result in less electricity being sold, they necessarily reduce the utility's revenues and earnings. For this reason, the legislature enacted OCGA § 46-3A-9, which allows utilities to recover the cost of demand-side programs plus an additional amount as an incentive to develop such programs: "The approved or actual cost, whichever is less, of any certificated demand-side capacity option shall be recovered by the utility in rates, along with an additional sum as determined by the commission to encourage the development of such resources. The commission shall consider lost revenues, if any, changed risks, and an equitable sharing of benefits between the utility and its retail customers."

We read this provision to say that a utility may recover the actual or approved costs of its demand-side programs by passing along such costs directly to its ratepayers along with an additional sum or incentive (as determined by the Commission) to encourage it to develop such programs. It seems clear to us that the legislature intended to treat demand-side costs outside of general ratemaking procedures by virtue of the fact that it provided for the utility to recover through rates not only its costs of such programs but an additional financial incentive to develop such programs over and above its overall rate of return. We further note that in providing for utilities to recover the cost of constructing new power plants, the legislature specified in OCGA § 46-3A-7 (a) that a utility should be permitted to include in its "rate base" the full amount of approved construction costs absent a showing of "fraud, concealment, failure to disclose a material fact, imprudence, or criminal misconduct." By contrast, § 46-3A-9 simply says that the utility shall recover its demand-side costs "in rates." Had the legislature intended for recovery of demand-side costs to be accomplished through traditional ratemaking principles, it would have specified that such costs could be put in the rate base as it did with power plant construction costs.

Finally, utilization of the test year method for calculating recovery of demand-side costs is unnecessary and would likely preclude the legislative mandate that utilities be allowed to recover their actual costs of such programs. OCGA § 46-3A-9. First, the purpose of the test year method is to analyze a utility's revenues, expenses and investment forecasted for an entire year and determine whether it is

earning an appropriate return. See OCGA § 46-2-26.1. Since § 46-3A-9 authorizes a utility to recover the exact costs of its demand-side programs plus an incentive, there is no need to utilize the test year analysis to look at its overall earnings.

Second, use of the test year method will not allow a utility to recover its exact costs of such programs plus an additional amount as an incentive because the test year method is not tied to recovery of specific costs but to an overall rate of return. However, under the rider mechanism approved by the Commission, which contains a true-up provision for factoring in any over or under collection of program costs in setting the rider for the next year, the stated purpose of re-covering the actual or approved costs of such programs will be met. See OCGA § 46-3A-9.

" 'The cardinal or pre-eminent rule governing the construction of statutes is to carry into effect the legislative intent and purpose if that is within constitutional limits.' [Cit.]" *Lewis v. City of Smyrna*, 214 Ga. 323, 326 (104 SE2d 571) (1958). Because use of the test year statute for calculating recovery of demand-side costs would frustrate the legislature's stated intent in encouraging utilities to develop such programs, we conclude the superior court erred in holding recovery of such costs must be accomplished pursuant to OCGA § 46-2-26.1 and that the Commission could not effectuate recovery of such costs through the use of a rider mechanism.

*Judgment reversed. Smith, J., and Senior Appellate Judge Harold R. Banke concur. McMurray, P. J., disqualified.*

DECIDED JULY 12, 1994 —
RECONSIDERATION DENIED JULY 28, 1994 — ▉▉▉▉▉▉▉▉▉

*Troutman Sanders, Douglas L. Miller, Hugh M. Davenport, Robert P. Williams II, Norman L. Underwood*, for appellant.

*Sutherland, Asbill & Brennan, C. Christopher Hagy, Randall D. Quintrell, Peyton S. Hawes, Jr., Nancy G. Gibson, Marilyn J. Thompson*, for appellees.